IN THE UNITED STATES DISTRCT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JULIO H. MOYA BUITRAGO | § | |
| | § | |
| v. | § | Civil No. 4:17CV378 |
| | § | Criminal No. 4:09CR194(14) |
| UNITED STATES OF AMERICA | § | |

**GOVERNMENT'S RESPONSE TO SECTION 2255 MOTION**

In accordance with the Court's order, the government responds to the motion under 28 U.S.C. § 2255 filed by Julio Hernando Moya Buitrago. Buitrago's claims that his attorney failed to advise him of the strength of the government's case and the possibility of a safety-valve reduction are without merit. His claim regarding the cumulative effect of his attorney's errors is also without merit.

## I. Proceedings

### A. Facts

Buitrago was identified, by both agents of the Colombian government and other cooperating sources, as an air traffic controller that was assisting Columbian drug traffickers while working for the Columbian government at the airport in Bogotá. PSR ¶ 9. According to testimony given at trial, Buitrago facilitated the illegal entry and departure of aircraft transporting cocaine for multiple Columbian drug traffickers. PSR ¶ 9. Buitrago would inform the drug trafficking pilots of any activity by the Columbian Air Force and instruct them on maneuvers to evade Columbian Air Force aircraft. PSR ¶ 9. Logs of intercepted phone calls documented over 200 calls between Buitrago and drug

**Response to Section 2255 Motion-Page 1**

traffickers. PSR ¶ 9. Buitrago also destroyed records of drug trafficking pilots when the Columbian government requested those records. PSR ¶ 9. The cocaine that Buitrago helped to transport ended up in multiple countries, including the United States. PSR ¶ 5.

**B. Procedural History**

On October 15, 2009, the grand jury returned a two-count indictment against Buitrago and 26 co-defendants.[1] Criminal ECF Doc. 1. Count One charged Buitrago with conspiracy to import and distribute five kilograms or more of cocaine and knowing that the cocaine would be unlawfully imported into the United States, in violation of 21 U.S.C. § 963 and 960(b)(1). Criminal ECF Doc. 1. Count Two charged Buitrago with manufacturing and distributing five kilograms or more of cocaine knowing that the cocaine would be unlawfully imported into the United States, in violation of 21 U.S.C. § 960(b)(1). Criminal ECF Doc. 1.

Buitrago proceeded to trial, and on October 19, 2012, he was found guilty of both counts. Criminal ECF Doc. 898. Based on a total offense level of 40 and a criminal history category of I, the presentence report established that Buitrago's guideline sentencing range was 292 to 365 months' imprisonment. PSR ¶ 44. On February 18, 2014, the Court sentenced Buitrago to 292 months' imprisonment each for Counts One and Two, to run concurrently. Criminal ECF Doc. 1208.

---

[1] Documents in criminal case file No. 4:09CR194(14) are referred to by "Criminal ECF" and document number. Documents in civil case file No. 4:17CV378 are referred to by "2255 ECF" and document number.

**Response to Section 2255 Motion-Page 2**

Buitrago filed a notice of appeal (Criminal ECF Doc.1224), and on January 28, 2016, the United States Court of Appeals for the Fifth Circuit affirmed his conviction. *United States. Rojas*, 812 F.3d 382, 416 (5th Cir. 2016). Buitrago filed the pending motion on June 2, 2017. Criminal ECF Doc. 1331; 2255 ECF Doc. 1. Buitrago claims that (1) his attorney failed to advise him of the strength of the government's case and the possibility of mitigating his sentence by pleading guilty; (2) his attorney failed to advise of the option to mitigate his sentence via the guidelines safety–valve section; and (3) the cumulative effects of his attorney errors caused him prejudice. The Court has ordered the government to respond. 2255 ECF Doc. 4.

At the request of the government, Buitrago's first lawyer, Mark Perez, provided an affidavit in response to the Section 2255 motion:

> My name is Mark Anthony Perez. I am an attorney licensed in the State of Texas. . . .
> I was appointed to represent Julio Hernando Moya-Buitrago who was charged with Conspiracy to Import Five Kilograms or More of Cocaine into the Unites States, in the Eastern District of Texas (Cause No. 4:09CRI 94).
>
> ∗∗∗
>
> 8. I have reviewed the file prior to making this affidavit.
>
> 9. I have reviewed Mr. Moya-Buitrago's Motion to Vacate filed on June 2, 2017.
>
> 10. As part of my representation of Mr. Buitrago, I discussed the criminal charges and the discovery provided by the government. We discussed his possible defenses. I also made him aware of his right to have a trial by jury. After discussing these issues with Mr. Moya- Buitrago, I gave him my best legal opinion that the government had sufficient evidence to find him guilty of the criminal charges beyond reasonable doubt.

11. Mr. Moya-Buitrago was adamant about contesting the charges, even m light of the evidence.

12. I urged him to consider pleading guilty because of the possibility of receiving a more favorable sentence, than if he contested the charges.

13. I discussed the guidelines and how they applied to his case. I informed him that because of the drug quantities that he would be held responsible for, he would have a base offense level of 38. I told him that it could be significantly reduced by 3-points for acceptance of responsibility and 2-points for Safety Valve.

14. I told him that he qualified for Safety Valve and informed him of the five factors that are considered when applying the reduction.

15. Mr. Moya-Buitrago was still adamant about going to trial. He did not seem interested in any reductions in sentence by avoiding jury trial.

16. I told him that I was willing to go to trial, if that was what he chose to do. I have represented many defendants who decided to go to jury trial, in spite of overwhelming evidence that could prove them guilty. In those trials, I represented my clients zealously. I always have my client's best interest in mind.

17. Mr. Moya-Buitrago hired Don Bailey as the trial date got closer. Although Mr. Buitrago did not tell me why he hired new counsel, I believe it was because I recommended that he plead guilty because of the evidence against him.

18. I believe that he hired Mr. Bailey because my legal opinion as to whether he should go to trial was contrary to his desire to contest the charges.

19. I informed him that I was prepared to go to trial, if it were necessary.

Attachment A at 1-3.

The government also asked Buitrago's second lawyer, Don Bailey, to provide an affidavit regarding his representation of Buitrago, and he provided the following:

[I] am an attorney and was retained by Julio Hernando Moya Buitrago to represent him in a drug conspiracy case that arose in Columbia and was brought in the Eastern District of Texas.

\*\*\*

Prior to filing my notice of appearance, I did a preliminary investigation and conferences with Mr. Buitrago about the upcoming trial because I did not want to be caught not prepared in the event that they late in retaining me. Thus, I spent four months preparing for trial once an appearance was filed. I represented him aggressively to try to correct some issues that had been previously litigated.

Mr. Buitrago insisted he was innocent and I thoroughly investigated the case and tended to agree with him. I discussed his issue with him extensively before trial based on the tapes phone calls of being the Government's only real evidence against Mr. Buitrago. The tapes were the one big problem because they were some telephone conversations that seemed to indicate Mr. Buitrago was assisting with directing a plane on a specific date that was controlled by a known drug trafficker who had died in 2009. However, no one could say there was a drug flight that day or that anything happened at all that day. Mr. Buitrago's explanation that he was making up stuff to tell the drug dealer because by that point he had become scared made sense to me but I could not get Mr. Buitrago to testify at trial. Thus given this, Counsel approached the government to see about a plea agreement and if memory serves me right the plea would have come out to about 135 months with acceptance and a lower amount of cocaine than he could face if he went to trial. Counsel also discussed safety-valve issues and the guidelines with Mr. Buitrago before trial and after trial because he would have been eligible under both circumstances. Mr. Buitrago refused to debrief with the Government about his involvement so the safety valve could not be applied. Thus, the second claim is simply not true. Furthermore, Mr. Buitrago insisted he was innocent and I still have seen nothing to show otherwise other than the jury verdict. Thus, regarding Mr. Buitrago's first claim about not being advised of the guidelines reduction for acceptance and mitigating his sentence through a plea it is not factual based on me going over the plea offer and showing how the guidelines would be applied to him if he went to trial. The one issue I did not foresee was applying a special skill enhancement which was applied and objected too at sentencing. I had researched this issue and could not determine that the specific facts would entitle the application of a special skill enhancement. Additionally, I met with Mr. Buitrago several times to go

**Response to Section 2255 Motion-Page 5**

over the evidence and the transcripts of the telephone conversations. I
disagree with Mr. Buitrago that the evidence was extensive against him.

Lastly, Mr. Buitrago asserts that cumulative impact. I disagree that either
of first two claims asserts ineffective assistance because I did go over the
sentencing guidelines and explained to him the possibility of a plea as well
as notifying him of the safety-valve before and after trial to the point where
I was trying to get him to debrief before sentencing and he refused.
However, when viewing the evidence and the assertion of Mr. Buitrago, I
always understood he was asserting his innocence and wanted to go to trial.
I cannot disagree with his conclusion. Further Affiant says nothing.

Attachment B at 1-2.

## II. Response

Under 28 U.S.C. § 2255, a prisoner may move the convicting court to vacate, set aside, or correct his conviction or sentence. It provides four grounds: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is 'otherwise subject to collateral attack.'" *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (citation omitted).

"It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). "Section 2255 does not offer recourse to all who suffer trial errors." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A 1981). It may also "not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). After conviction and the exhaustion or waiver of all appeals, the Court is "entitled to presume" that the prisoner "stands fairly and finally convicted." *Id.* at 164.

**A. Buitrago's claims of ineffective assistance of counsel are without merit.**

To obtain reversal of a conviction based on ineffective assistance of counsel, a convicted defendant must show that the attorney's performance was deficient and that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The proper standard for judging the performance of an attorney is that of reasonably effective assistance considering all of the circumstances. *Id*. at 688. "When a convicted defendant complains of ineffective of assistance of counsel, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. Judicial scrutiny of counsel's assistance must be "highly deferential," and "a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id*. at 689. A court must employ a strong presumption that counsel's conduct falls within a wide range of reasonably professional assistance. *Id*. at 690. The proper standard for the showing of prejudice requires the defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Conclusory statements by a defendant are not enough to sustain a claim of ineffective counsel. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001). The defendant's allegations of ineffective counsel must be supported by the record. *United States v. Johnson*, 679 F.2d 54, 58-59 (5th Cir. 1982). Counsel is not ineffective for

failing to press a frivolous point. *E.g., Sones v. Hargett*, 61 F.3d 410, 420-21 (5th Cir. 1995).

**1. Buitrago's claim that his attorney failed to inform him of the strength of the government's case and the possibility of mitigating his sentence by pleading guilty is without merit.**

Buitrago claims that he would have entered a plea of guilty had his attorney informed him of the strength of the government's case. According to Buitrago, "there were never any meetings to discuss the extensive evidence, the guidelines, the application of the relevant conduct or the possible enhancements" that he would face if he was convicted. Br. at 14. He fails to show ineffective assistance, however.

To meet the prejudice prong of the *Strickland* test, relating to a defendant's decision not to accept a plea offer and instead proceed to trial, the defendant must show that (1) but for the ineffective advice of counsel there is a reasonable probability that the defendant would have accepted the plea offer; (2) the prosecution would not have withdrawn it in the light of intervening circumstances; (3) the court would have accepted its terms; (4) and the conviction or sentence—or both—under the terms of the offer would have been less severe than under the judgment and sentence that were, in fact, imposed. *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012); *United States v. Rivas-Lopez,* 678 F.3d 353, 357 (5th Cir. 2012). Any amount of additional jail time is significant for the purpose of showing prejudice to the defendant. *United States v. Grammas,* 376 F.3d 433, 439 (5th Cir. 2004).

Here, Buitrago does not point to any evidence to show that his attorney failed to advise him of the advantages of entering a plea or the strength of the government's case other than his own affidavit. Nor has he pointed to any evidence to show that he would have insisted on going to trial but for his attorney's failure. On the other hand, Perez states that he discussed the government's case with Buitrago and that it was in his opinion that Buitrago should enter a plea of guilty. Attachment A at 2. According to Perez, Buitrago was adamant about going to trial. Attachment A at 2-3. Bailey, however, states in his affidavit that he did not think the government's case was very strong and disagrees with Buitrago that the evidence against him was overwhelming. Attachment B at 1-2. Like Perez, Bailey states that Buitrago insisted he was innocent and wanted to go to trial. Attachment B at 1. Bailey also states that he met frequently with Buitrago and discussed how the guidelines worked and his sentencing exposure. Attachment B at 1-2.

Buitrago does not point to any evidence to show that he would have received a lesser sentence if he had entered a plea. Nor does he show that the prosecution would not have withdrawn the plea offer in light of intervening circumstances, the Court would have accepted its terms, or that the conviction or sentence under the offer would have been less severe than the judgment and sentence imposed.

Based on the above, Buitrago has not met his burden under either prong of the *Strickland* test, and this claim is without merit.

> **2. Buitrago's claim that his counsel did not advise him of the requirements of safety-valve provision are without merit.**

Buitrago claims that he was prepared to debrief with the government but could provide a proffer because he was not made aware of the opportunity by his counsel. Br. at 20-21. This claim is contradicted by his counsel.

A defendant's claim of ineffective counsel in that his attorney failed to advise him that he was eligible for safety valve relief requires more than a conclusory statement that he would have been willing to provide the government with truthful information but for his attorney's error. *Deltoro-Aguilera v. United States*, 625 F.3d 434, 438 (8th Cir. 2010).

Buitrago does not point to any evidence to show that he was willing to debrief before he was sentenced. Perez states that he advised Buitrago that he would qualify for the safety valve provision and informed of the requirements of the provision. Attachment A at 2. And Bailey states that he encouraged Buitrago to take advantage of the possible safety-valve reduction, but Buitrago refused to offer any information to the government. Attachment B at 1-2. Based on the above, Buitrago again fails to meet his burden under either prong of the *Strickland* test, and this claim is without merit.

**B. Buitrago's claim that the cumulative effect of his attorney's errors caused him prejudice is without merit.**

Buitrago claims that the cumulative effects of the errors by his attorney requires a reversal of his conviction and sentence.

A meritless claim or claims that were not prejudicial cannot be cumulated, regardless of the total raised, so as to establish that counsel's performance was

**Response to Section 2255 Motion-Page 10**

performance was ineffective. *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008). As shown above, neither of Buitrago's claims has merit. Consequently, this claim is without merit.

### III. Conclusion

Based on the above, Buitrago's claims of ineffective assistance of counsel are without merit. Likewise, his claim that the cumulative effects of his attorney's errors caused him prejudice is without merit. Therefore, the government respectfully urges the Court to deny his motion.

Respectfully submitted,

Brit Featherston
Acting United States Attorney

/s/
Heather H. Rattan
Assistant United States Attorney
101 E. Park, Ste. 500
Plano, TX 75074
Telephone: (972)-509-1201
Fax: (972)-509-1209

### CERTIFICATE OF SERVICE

On the 5th day of October 2017, I certify that a true and correct copy of the government's response to motion was mailed from Plano, Texas, to: Julio Hernando Mayo Buitrago, pro se, # 18413-078, FCI Miami, P.O. Box 779800, Miami, FL 33177.

/s/
Heather H. Rattan
Assistant United States Attorney

**Response to Section 2255 Motion-Page 11**