IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JULIO H. MOYA BUITRAGO, #18413-078 | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:17cv378 |
| | § | CRIMINAL ACTION NO. 4:09cr194(14) |
| UNITED STATES OF AMERICA | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is *pro se* Movant Julio Hernando Moya Buitrago's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. After careful consideration and for the reasons stated below, the Court will deny the motion.

### I.  BACKGROUND

On October 19, 2012, a jury found Movant guilty of Count One (conspiracy to import five kilograms or more of cocaine and to manufacture and distribute five kilograms or more of cocaine intending and knowing that the cocaine will be unlawfully imported in the United States, in violation of 21 U.S.C. §§ 963, 960(b)(1)) and Count Two (manufacturing and distributing five kilograms or more of cocaine, and intending and knowing that the cocaine will be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959, 960(b)(1)) of his indictment. Based on a total offense level of 40 and a criminal history category of I, the Presentence Report ("PSR") established Movant's guideline sentence range to be 292 to 365 months' imprisonment. On February 18, 2014, United States District Judge Marcia A. Crone  denied Movant's motion for new trial and imposed a sentence of 292 months' imprisonment on each of Counts  One and Two, to be served concurrently for a total term of 292 months.   The United States Court of Appeals for the Fifth Circuit affirmed Movant's conviction and sentence on January 28, 2016. *United States v. Rojas*, 812 F.3d 382, 416

(5th Cir. 2016). On April 14, 2016, the District Court reduced Movant's sentence to 235 months' imprisonment pursuant to 18 U.S.C. § 3582( c)(2).

The Fifth Circuit Court of Appeals provided a statement of facts:

In October 2009, a grand jury returned a two-count indictment charging twenty-seven defendants with participation in a vast Colombian conspiracy to import cocaine into the United States. Count One charged a conspiracy offense under 21 U.S.C. § 963, alleging: (1) the defendants conspired to knowingly and intentionally import five or more kilograms of cocaine into the United States, in violation of 21 U.S.C. §§ 952 and 960; and (2) the defendants conspired to knowingly and intentionally 389 manufacture and distribute five or more kilograms of cocaine, intending and knowing that it would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959 and 960. Count Two alleged that the defendants aided and abetted each other while intentionally and knowingly manufacturing and distributing five or more kilograms of cocaine, intending and knowing that it would be unlawfully imported into the United States, in violation of 21 U.S.C. § 959 and 18 U.S.C. § 2.

Nineteen of the twenty-seven defendants pled guilty, two died before they could be extradited to the United States, and two fled and remain fugitives. The four remaining defendants—appellants here—went to trial: Jaime Gonzalo Castibl Cabalcante ("Cabalcante"), Oscar Orlando Barrera Piñeda ("Piñeda"), Julio Hernando Moya Buitrago ("Moya"), and Roberth William Villegas Rojas ("Rojas").

The trial focused primarily on two drug transactions. The first transaction was a thwarted attempt in December 2007 to move at least 1,000 kilograms of cocaine from Colombia to Guatemala and, from there, to the United States–Mexico border and then into the United States. This particular plan involved a plane with tail number HP1607, and thus was often referred to by the parties as the HP1607 flight or the HP1607 deal. Cabalcante brokered the HP1607 deal by introducing the Colombian suppliers to the Mexican buyers, members of the Los Zetas drug cartel. The Zetas paid about $7.9 million for this deal—an amount that would have purchased several thousand kilograms of cocaine in 2007.

In Colombia, Carlos Eduardo Gaitan–Uribe ("Gaitan"), who was indicted in this conspiracy but died before trial, coordinated logistics by recruiting pilots, maintaining airplanes, securing clandestine airstrips, and contacting corrupt air traffic controllers. Defendant Moya, an air traffic controller who worked as a supervisor at the El Dorado International Airport in Bogota, agreed to help Gaitan get HP1607 through Colombian airspace. Defendant Piñeda was the pilot who flew HP1607 from Bogota to Panama for staging. Piñeda also coordinated the pilots who then flew the plane from Panama back into Colombia to pick up the cocaine.

> HP1607's return trip to Colombia on December 20, 2007, did not go as planned. The Colombian Air Force detected the plane heading back to Colombia and sent a plane to follow HP1607 until it landed at a clandestine air strip. Because the Air Force failed to make contact with HP1607 before it landed, the Air Force dispatched a combat aircraft to the landing strip. After firing warning shots with no response, the Air Force fired at HP1607 and destroyed it. In a wiretapped call after the thwarted HP1607 flight, Piñeda commented that they "were left without Christmas" and could instead "get together and cry together" about the failed flight. The Zetas held Cabalcante responsible for the failed transaction, holding him hostage for three months.
>
> Although he was not involved in the HP1607 transaction, Defendant Rojas was involved in other cocaine transactions. Rojas was connected to the conspiracy through a drug trafficker named German Giraldo Garcia (alias "El Tio"), who was indicted in this case but remains a fugitive. El Tio worked with David Quinones ("Quinones"), Gaitan's logistics partner, to build an organization to import drugs into the United States. The main transaction concerning El Tio that the parties focused on at trial involved a deal he made in 2008 with a cocaine supplier named Jamed Colmenares (alias "El Turco"). Rojas was El Turco's right-hand man. The buyer for this $1.1 million deal was a Mexican man called "Chepa." This transaction also failed when, on October 22, 2008, the Colombian National Police intercepted a truck carrying about 1,000 kilograms of cocaine.
>
> After Chepa held El Tio hostage for failing to deliver the cocaine, Chepa and El Tio agreed that El Tio would have to make up for the lost truck load. On November 26, 2008, El Tio had a meeting with Quinones, El Turco, and Rojas to plan their second attempt. Five days after the meeting, Rojas said over the phone that he had half the "luggage" at his house and was waiting for El Tio to tell him when to transport the load to an airplane so that it could be flown to Central America.
>
> The Colombian National Police again thwarted this plan the very next day when the police seized 286 kilograms of cocaine found in a parked truck. Rojas paced the street in front of the parking lot while the police searched the truck. On a wiretapped call, Rojas told his boss, El Turco, that the cocaine had been seized again.
>
> After a three-week trial, the jury found Cabalcante, Moya, and Rojas guilty of the § 963 conspiracy offense charged in Count One and all four defendants guilty of the § 959 distribution offense charged in Count Two. This appeal followed.

*Rojas*, 812 F.3d at 388-90.  Further, Movant's Presentence Report ("PSR") shows:

> [Movant] was identified by both Columbian authorities and multiple cooperating sources as an air traffic controller for the Aeronautica Civil de Columbia in Bogata. According to witness testimony at trial, [Movant] facilitated the illegal entry and/or

3

> departure of cocaine-laden aircraft for Gaitan-Uribe and others by informing the pilots of those planes of any activity of the Columbian Air Force, and by instructing them on what maneuvers to perform to evade the Columbian Air Force. The witnesses at trial established that Gaitan-Uribe was a drug trafficker, who routinely bribed air traffic controllers. Furthermore, the logs of intercepted telephone calls documented over 200 telephone calls between [Movant] and Gaitan-Uribe. [Movant] also destroyed the flight log information regarding flights conducted by [Drug Trafficking Organization] pilots when those documents had been requested of him by Columbian authorities.

Criminal Action No. 4:09cr194(14) (Dkt. #1146 at 6).

The instant motion was filed on June 8, 2017. Movant asserts he is entitled to relief based on ineffective assistance of counsel. The Government filed a Response, claiming Movant's issues are without merit, to which Movant filed a Reply. The Government then filed a Supplemental Response to which Movant filed a Supplemental Reply.

## II. STANDARD FOR SECTION 2255 PROCEEDINGS

As a preliminary matter, it should be noted that a § 2255 motion is "fundamentally different from a direct appeal." *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992). A movant in a § 2255 proceeding may not bring a broad-based attack challenging the legality of the conviction. The range of claims that may be raised in a § 2255 proceeding is narrow. A "distinction must be drawn between constitutional or jurisdictional errors on the one hand, and mere errors of law on the other." *United States v. Pierce*, 959 F.2d 1297, 1300-01 (5th Cir. 1992). A collateral attack is limited to alleging errors of "constitutional or jurisdictional magnitude." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Movant claims he is entitled to habeas relief based on ineffective assistance of counsel. Movant's first attorney was Mark Perez ("Perez"), and his second attorney was Don Bailey

4

("Bailey"). Perez was court-appointed counsel at Movant's initial appearance and during pre-trial. Prior to trial, Movant's family retained Bailey, who represented Movant for the remainder of pre-trial – from August 15, 2012 – and throughout trial and on appeal.

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction requires the defendant to show the performance was deficient and the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id*. at 700. A movant who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Strickland*, 466 U.S. at 690.

The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981). A movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Movant must "affirmatively prove," not just allege, prejudice. *Id*. at 693. If he fails to prove the prejudice component, a court need not address the question of counsel's performance. *Id*. at 697.

Movant claims that he would have entered a plea of guilty had Counsel advised him of the strength of the Government's case against him and the value of the safety valve provision. Movant claims, "there were never any meetings to discuss the extensive evidence, the guidelines, the

5

application of the relevant conduct or the possible enhancements" that he would face if he was convicted. (Dkt. #3-1). He also claims he was prepared to debrief but was not made aware of the opportunity by Counsel.

As it concerns a defendant's decision not to plead guilty and instead, proceed to trial, he must show that: (1) but for the ineffective advice of counsel, there is a reasonable probability that he would have accepted the plea offer; (2) the prosecution would not have withdrawn the offer in the light of intervening circumstances; (3) the court would have accepted its terms; and (4) the conviction or sentence or both under the terms of the offer would have been less severe than under the judgment and sentence that were, in fact imposed. *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012); *United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012). For purposes of showing prejudice, any amount of additional jail time is considered significant. *United States v. Grammas*, 376 F.3d 433, 439 (5th Cir. 2004).

In this case, Movant fails to direct the Court to any evidence showing that either Perez or Bailey failed to advise him of the Government's evidence against him or the advantages of entering a plea, other than his own conclusory affidavit and that of his wife. Movant also fails to show anything in the record reflecting that he would have insisted on going to trial, but for Counsel's alleged ineffectiveness. In Movant's first affidavit, he makes the highly implausible claim that the only option that was explained to him was to have a jury determine if the charges against him were true. He also claims that the safety valve provisions were never discussed with him. Both Perez and Bailey contradict this claim, noting they explained the evidence, the advantages of a plea with acceptance of responsibility, and safety valve provisions.

In response to Movant's allegations, Perez stated:

10. I discussed the criminal charges and the discovery provided by the government. We discussed his possible defenses. I also made him aware of his right to have a trial by jury. After discussing these issues with [Movant], I gave him my best legal opinion that the government had sufficient evidence to find him guilty of the criminal charges beyond a reasonable doubt.

11. [Movant] was adamant about contesting the charges, even in light of the evidence.

12. I urged him to consider pleading guilty because of the possibility of receiving a more favorable sentence, than if he contested the charges.

13. I discussed the guidelines and how they applied to his case. I informed him that because of the drug quantities that he would be held responsible for, he would have a base offense level of 38. I told him that it could be significantly reduced by 3-points for acceptance of responsibility and 2-points for Safety Valve.

14. I told him that he qualified for Safety Valve and informed him of the five factors that are considered when applying the reduction.

15. [Movant] was still adamant about going to trial. He did not seem interested in any reductions in sentence by avoiding jury trial.

. . .

18. I believe that [Movant] hired Mr. Bailey because my legal opinion as to whether he should go to trial was contrary to his desire to contest the charges.

(Dkt. #9-2). Bailey stated in his affidavit:

[Movant] insisted he was innocent and I thoroughly investigated the case and tended to agree with him. I discussed this issue with him extensively before trial based on the tapes of phone calls being the Government's only real evidence against [Movant]. The tapes were the one big problem because they were of some telephone conversations that seemed to indicate [Movant] was assisting with directing a plane on a specific day that was controlled by a known drug trafficker who had died in 2009. However, no one could say there was a flight that day or that anything happened at all that day. [Movant's] explanation that he was making up stuff to tell the drug dealer because by that point he had become scared of him made sense to me but I could not get [Movant] to testify at trial. Thus, given this, Counsel approached the government to see about a plea agreement and if memory serves me right the plea would have come out to about 135 months with acceptance and a lower amount of

> cocaine than he could face if he went to trial. Counsel also discussed safety valve issues and the guidelines with [Movant] before trial and after trial because he would have been eligible under both circumstances. [Movant] refused to debrief with the Government about his involvement so the safety valve could not be applied. . . . Thus, regarding [Movant's] first claim about being not advised of the guidelines, reduction for acceptance and mitigating his sentence through a plea is not factual based on me going over the plea offer and showing him how the guidelines would be applied to him if he went to trial. . . . I disagree that either of the first two claims asserts ineffective assistance because I did go over the sentencing guidelines and explained to him the possibility of a plea as well as notifying him of the safety valve before and after trial to the point where I was trying to get him to debrief before sentencing and he refused.

Dkt. #9-3. Both Perez and Bailey provided specifics of their discussions of the evidence against Movant, the advantages of entering a guilty plea, and the safety valve provisions. Both Perez and Bailey stated Movant was adamant about going to trial in spite of the Government's evidence against him. While Perez and Bailey disagree on the strength of the evidence against Movant, both discussed the evidence, the sentencing guidelines, and Movant's sentencing exposure. They both discussed points for acceptance of responsibility and the safety valve provisions. Furthermore, Perez urged Movant to plead guilty and Bailey attempted to negotiate a plea offer. Accordingly, Movant fails to show deficient performance.

In Movant's Reply, he claims he was never aware that the Government had offered him a plea deal of 135 months' imprisonment. The failure to inform a defendant of a plea can constitute ineffective assistance of counsel. *Teague v. Scott*, 60 F.3d 1167, 1171 (5th Cir. 1995). The defendant must show that counsel failed to inform him of the plea offer. *Id.* Movant provides no evidence to show there was an actual plea offer of 135 months or that counsel failed to inform him of it. While Bailey discussed the possibility of a plea offer in the guidelines range of 135-168 months, he did not state that an offer had been made.

8

The record shows that Perez urged Movant to consider pleading guilty based on the weight of the evidence against him, but Movant was "adamant about going to trial" and "did not seem interested in any reductions in sentence by avoiding trial. Bailey also stated that Movant had no interest in pleading guilty or cooperating because he maintained his innocence and wanted to go to trial. In his Reply, Movant, for the first time, claims that "he never wanted to proceed to trial and would have accepted the 135-month offer." (Dkt. #10). Movant does not show, nor does the record reflect that there was a concrete 135-month offer pursuant to Fed. R. Crim. P. 11(c)(1)(C). Movant misconstrues Bailey's affidavit. Bailey's statement was that he approached the Government to see about a plea agreement and if Movant had been willing, such plea offer " would have come to about 135 months[.]" (Dkt. #9-2). In his second affidavit, Bailey explained that there was never an agreement for a specific 135-month sentence under Fed. R. Crim. P. 11(c)(1)(C), but that he remembers a possible deal that would have resulted in a sentencing guideline range of 135-168 months. (Dkt. #14-1). Bailey relayed the possible plea offer to Movant, but Movant rejected the offer and "wanted to go to trial as a result of his claim of innocence." *Id.* Bailey also told Movant that the Government wanted him to cooperate as part of the plea. "I relayed this information to Mr. Moya. Mr. Moya rejected the offer." *Id.* Further, Bailey told Movant after he was convicted that he could still get safety valve relief if he would truthfully debrief with the Government, but Movant declined. *Id.*

In sum, both Perez and Bailey stated that Movant was adamant about proceeding to trial to prove his innocence. While Bailey discussed a possible plea deal with the Government, there was no specific plea offer – only a discussion of a sentencing guideline range of approximately 135-168 months. Moreover, although a range of 135-168 months is better than the sentence imposed, Movant

9

does not show that the plea offer would have been officially offered, that the prosecution would not have withdrawn the plea offer in light of intervening circumstances, or that the Court would have accepted its terms. *Lafler*, 132 S. Ct. at 1384; *Rivas-Lopez*, 678 F.3d at 357.  Thus, he fails to meet his burden for ineffective assistance of counsel relating to his decision not to plead guilty.

Movant also claims the cumulative effect of Counsel's errors resulted in prejudice.  Federal relief is available only for cumulative errors that are of constitutional dimension.  *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997).  This Court has considered each of Movant's claims, and found them to be without merit.  Alleged errors that did not occur can have no cumulative effect. *United States v. Moye*, 951 F.2d 59, 63 n. 7 (5th Cir. 1997).  Accordingly, a claim of cumulative error must fail in this case.  *Id*.

Finally, Movant requests an evidentiary hearing.  Evidentiary hearings, however,  are not required in federal habeas corpus proceedings. *See* Rule 8, *Rules Governing § 2255 Cases in the United States District Courts*; *see also McCoy v. Lynaugh*, 874 F.2d 954, 966-67 (5th Cir. 1989). Quite the contrary, "to receive a federal evidentiary hearing, a petitioner must allege facts that, if proved, would entitle him to relief."  *Wilson v. Butler*, 825 F.2d 879, 880 (5th Cir. 1987), *cert. denied*, 484 U.S. 1079 (1988).  *See also Townsend v. Sain*, 372 U.S. 293, 312 (1963).  "This requirement avoids wasting federal judicial resources on the trial of frivolous habeas corpus claims." *Wilson*, 825 F.2d at 880.  As the record shows,  Perez and Bailey both affirm that Movant was emphatic  about going to trial in spite of the Government's evidence against him.  The bottom line is that Movant wanted to go to trial and show he was innocent.  Both Perez and Bailey consistently affirm that they discussed the Government's evidence against Movant, the advantages of entering a guilty plea with acceptance of responsibility and receiving  the relief provided by debriefing.

10

Bailey states he discussed a possible plea offer, but that Movant "wanted to go to trial as a result of his claim of innocence." (Dkt. #14-1). Even after conviction, Bailey advised Movant of the advantage of debriefing, but Movant still refused. *Id.* Perez and Bailey provided specific and detailed affidavits. Movant fails to show that he is entitled to an evidentiary hearing. *See United States v. Auten*, 632 F.2d 478, 480 (5th Cir. 1980) (noting that mere conclusory allegations are not sufficient to support a request for an evidentiary hearing).

## IV.  ACTUAL INNOCENCE

Finally, although it is not clear, to the extent that Movant claims that he is actually innocent, a mere assertion of "stale factual innocence" is unpersuasive. *Drew v. Scott*, 28 F.3d 460, 462 (5th Cir. 1994). "Actual innocence means 'factual innocence and not mere legal insufficiency.'" *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329. In this case, Movant presents no new reliable evidence to show he is factually innocent; thus, the issue is without merit.

## V.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Although Movant has not yet filed a notice of appeal, the Court, nonetheless,

addresses whether Movant would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a [certificate of appealability] should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of Movant's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*,

529 U.S. at 484). Accordingly, Movant is not entitled to a certificate of appealability as to the claims raised.

## VI.  CONCLUSION

Movant fails to show that Counsel's performance was deficient or that, but for Counsel's alleged ineffectiveness, the outcome would have been different. He also fails to show that cumulative errors entitle him to relief or that he is actually innocent. In conclusion, Movant fails to meet his burden of proof.

It is accordingly **ORDERED** the motion to vacate, set aside, or correct sentence is **DENIED** and the case is **DISMISSED** with prejudice. A certificate of appealability is **DENIED**. All motions not previously ruled upon are **DENIED**.

**SIGNED this 29th day of September, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE